IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bala Bangles, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:21-cv-05051 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| The Entities and Individuals Identified in Annex A, | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

**PLAINTIFF'S OPPOSITION TO CERTAIN DEFENDANTS'
MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(2)**

Plaintiff Bala Bangles, Inc. ("Bala") opposes Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(2). Dkt. 83.

**I.      INTRODUCTION**

All of the moving Defendants (hereinafter "Mr. Shen") appear to be related as a single individual, namely, Wei Shen, is responsible for "supervising the operations of the Wish stores listed in Exhibit A." Dkt. 49-4, Declaration of Wei Shen.[1]  Mr. Shen does not dispute the merits of Bala's design patent infringement claim, nor can he.

| Design Patent Figures | Exemplary Images of Accused Products |
|---|---|
| | |

---

[1] Mr. Shen did not file or attach his declaration in connection with his Motion to Dismiss (Dkt. 83), but nonetheless refers to it throughout the motion.  Rather, the declaration was attached to his Motion to Dissolve the Preliminary Injunction filed in December 2021 (Dkt. 49-4).

Rather, Mr. Shen seeks to dismiss the proceeding based on a purported lack of personal jurisdiction. Despite accepting 93 orders for infringing product to be shipped to Illinois, Mr. Shen claims to operate the moving Defendants as Chinese-based businesses with insufficient contacts with the State of Illinois. Dkt. 83.

Mr. Shen has further failed to produce any evidence that the assets in Mr. Shen's Wish accounts are not the proceeds of counterfeit sales in Illinois. For example, Mr. Shen does not provide any evidence or explanation, other than a self-serving declaration that raises factual disputes, to confirm products were not sold to Illinois. Confusingly, Mr. Shen attaches Exhibit B to his motion without any explanation or mention of the exhibit in the supporting memorandum. While Bala can only speculate as to the purpose and source of Exhibit B, it appears the Exhibit may include screenshots from Mr. Shen's Wish merchant dashboard and may be intended to show Mr. Shen's sales records. However, the document cannot be relied on to show Mr. Shen's sales records or that Mr. Shen did not sell infringing product in Illinois and the United States. The document, if genuine, is wholly unsubstantiated as it does not provide information about the time or date the information was collected or generated, and does not show where or to whom sales were made, and thus cannot prove that Mr. Shen has never shipped or sold accused product into the United States or Illinois.

**II. BACKGROUND**

Bala filed this action on September 23, 2021. Dkt. 1. On September 28, 2021, this Court entered a Temporary Restraining Order ("TRO") against Defendants (Dkt. 21), which was later extended on October 14, 2021 (Dkt. 28). On November 17, 2021, in finding that Plaintiff would likely succeed on the merits, the Court entered a preliminary injunction against Defendants, enjoining Defendants from, among other things, offering for sale or selling counterfeit products

and preventing the fraudulent transfer of assets, so that Bala's right to relief is not impaired. Dkt. 42.

Mr. Shen filed an emergency motion to dissolve the preliminary injunction on December 2, 2021. Dkt. 49. In a good faith effort to resolve the matter amicably, Plaintiff agreed to reduce the asset restraint on Mr. Shen's accounts based on the representation that the Parties would continue settlement negotiations. On December 24, 2021, the Parties filed a joint motion for entry of an asset restraint order and to withdraw Mr. Shen's motion to dissolve the preliminary injunction. Dkt. 76. The Court granted the Order on December 29, 2021. Dkt. 78. Despite Plaintiff's attempts to continue settlement negotiations, after the funds were released pursuant to the asset restraint order, Mr. Shen filed a motion to dismiss based on lack of personal jurisdiction that, in many ways, is identical to his motion to dissolve the preliminary injunction. Dkt. 83.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) governs dismissals based on lack of personal jurisdiction. A plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all well-pleaded facts alleged in the complaint are taken as true and any factual disputes in affidavits are resolved in plaintiffs' favor. *Id.* Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. Because the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by federal due process, here the state statutory and federal constitutional inquiries merge. *Tamburo*, 601 F.3d at 700. *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, No. 16 CV 3676, 2017 WL 365555, at *1 (N.D. Ill. Jan. 25, 2017)

IV.     ARGUMENT

    A.     **The Court Has Personal Jurisdiction Over Mr. Shen**

The instant lawsuit arises out of Mr. Shen's contacts with Illinois. Here, (1) Mr. Shen purposefully directed his activities at Illinois or purposefully availed himself of the privilege of conducting business in Illinois, (2) the cause of action arises out of Mr. Shen's activities in Illinois, and (3) Mr. Shen had knowledge the effects would be felt in Illinois. Personal jurisdiction is proper with respect to Mr. Shen because, in part, he accepted orders to Illinois addresses, including provided estimated delivery dates for those orders.

    1.     **Mr. Shen Purposefully Directed Activities to Illinois**

Mr. Shen stood ready and willing to do business with Illinois residents. In *Illinois v. Hemi Grp. LLC*, the Seventh Circuit explained that, "Hemi stood ready and willing to do business with Illinois residents." 622 F.3d 754, 757-58 (7th Cir. 2009). "It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois that justify exercising personal jurisdiction over Hemi in Illinois." *Id.* at 758. As such, specific jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id.* Following Hemi, the Seventh Circuit in *Curry v. Revolution Labs., LLC* determined that personal jurisdiction was proper over non-resident e-commerce store operators that recognized Illinois as a ship-to option:

> We are satisfied that Revolution has formed sufficient minimum contacts with Illinois. Like Hemi, Revolution sells its products only online through its website and third-party websites. Revolution's interactive website for the sale of its products requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose… Revolution's own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful. Preparing to engage in commercial activity,

949 F.3d at 399.

4

Further, in *Monster Energy Company v. Chen Wengsheng, et al*, the Court held that personal jurisdiction was proper though a counterfeit product was never sold to Illinois because at least three Illinois residents attempted to purchase them and one Illinois resident communicated with defendant regarding payment. 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015).

Under this precedent, Illinois courts have consistently exercised personal jurisdiction over non-resident e-commerce store operators. *See*, e.g., *Tommy Hilfiger Licensing LLC et. al. v. The P'ships*, et al., No. 20-cv-7477 (N.D. Ill March 24, 2021) (DKT. 46) (unpublished) ("though not physically located in Illinois or even in the United States, [defendant] operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products should be shipped, including Illinois as one of the options. This is enough to amount to [defendant] having purposefully availed itself of doing business in Illinois."); *Mori Lee v. Partnerships*, No. 19-cv-7555 (N.D. Ill. May 14, 2020) (Dkt. No. 60) (unpublished); *Volkswagen AG v. iman365-usa*, No. 18-CV-06611, 2020 WL 977969, at *11 (N.D. Ill. Feb. 28, 2020); *Conair Corp., et al. v. Chen Xin, et al.*, No. 16-cv- 09693 (N.D. Ill. Mar. 22, 2017).

The Seventh Circuit has cautioned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011). However, in the instant case, Mr. Shen is more than merely operating interactive websites.

First, Mr. Shen took affirmative steps to establish online storefronts on Wish.com. He specifically chose a site that is marketed, promoted, and presented to consumers in the United

5

States, including Illinois and has taken conscious, deliberate steps to set up the storefronts on Wish.com.

Second, Mr. Shen does not restrict the storefronts from offering sales to, or shipment to Illinois consumers, despite having the ability to do so. For example, Wish states that merchants "have access to tools in Wish that can limit or restrict items from the marketplace based on the customer's country laws." *See* Exhibit A. Accordingly, store operators such as Mr. Shen can choose to restrict exposure of items to certain geographic areas. Despite this ability, Mr. Shen actively chose to allow the listings to be viewed and purchased by United States residents, and more specifically, Illinois consumers. Further, Wish merchants, like Mr. Shen, can specify which countries it wishes to ship products. Wish's Merchant FAQ about shipping specifically states:

1. If you choose 'Ship to Us Only' items from your store can be purchased only by consumers from the United States.
2. If you choose 'Ship to Selected Countries/Regions,' items from your store can be purchased by customers from the countries/regions that you select only. If you select 'Add all Countries,' items from your store can be purchased by customers worldwide. *See* Exhibit B.

Mr. Shen's products at issue were available for order and shipping to Illinois addresses, indicating that Mr. Shen deliberately chose to allow shipping to the United States such that United States customers could order the product for shipment to any state, including Illinois.

Third, Mr. Shen accepted at least 93 orders of the product at issue intended for Illinois addresses. Proof of purchase of the 93 orders are attached hereto as Exhibit C. The orders for the product at issue were accepted, and Mr. Shen provided an estimated delivery date to Illinois

6

addresses. *See* Exhibit C; Bolos Decl., ¶ 4. Suspiciously, many of these orders were cancelled, likely because Mr. Shen, who manages all of the moving Defendants, realized there was an influx of orders from the Chicagoland area, and thus flagged the orders as suspicious, and subsequently cancelled as many orders as he still could. However, the order status of 43 orders remain pending. Bolos Decl. ¶ 5. Further, the purchasers' credit cards were charged for the 93 orders, but never refunded. Bolos Decl, ¶ 6. Overall, Mr. Shen stood ready and willing to accept orders and money from customers with Illinois addresses, and in fact did accept orders, and thus Mr. Shen deliberately directed activities to Illinois. It is therefore reasonable Mr. Shen may find himself haled to the courts in Illinois.

### 2. Plaintiff's Claims Arise out of Mr. Shen's Contacts with Illinois

Bala's claims "arise out of" or "relate to" Mr. Shen's contacts with Illinois such that personal jurisdiction is warranted. Mr. Shen relies on *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.* where the sales in question did not relate to the cause of action. 751 F.3d 796, 801 (7th Cir. 2014). However, the instant case is distinguishable from *Advanced Tactical* insofar as the 93 orders with a shipping address to Illinois were for products that infringe the intellectual property at issue in this litigation. *See* Exhibit C. Though some orders were cancelled, albeit the purchaser was never refunded for those orders, nearly half of the orders remain pending for shipment to Illinois. Mr. Shen knowingly conducts business that impacts Illinois by: (1) accepting orders for shipment to Illinois, (2) cancelling those orders and/or allowing them to remain pending for months, and (3) not providing consumers refunds or further communication about those orders. The conduct constitutes tortious activity arising out of contacts in Illinois and triggers Bala's claims against Mr. Shen. Accordingly, Bala's claims arise directly out of Mr. Shen's contacts with Illinois.

7

### 3. Mr. Shen Would Anticipate Being Haled To Court in Illinois

Under both the Illinois Long Arm Statute and Fed. R. Civ. P. 4(k)(1), notions of fair play and substantial justice are satisfied. Illinois has a strong interest in protecting Illinois consumers from being duped into purchasing knockoff products. Furthermore, modern transportation and communications have made it less burdensome for a party to defend itself in a State where he derives economic benefits. *Burger King*, 471 U.S. at 474. Finally, it does not offend the notions of fair play that a foreign individual or company who decides to avail themselves of an e-commerce platform targeted to and frequented by American consumers, including those in Illinois, must come to the United States and stand accountable for violations of U.S. Law. *Christian Dior Couture, S.A.*, 2015 U.S. Dist. 2015 BL 386551. Mr. Shen certainly should not be surprised by the jurisdictional consequences of his actions given he had sufficient resources to purposefully avail himself of the Illinois market. *Id*. at *14.

While Mr. Shen cites *Hemi* and *Advanced Tactical* in support of his position, applying that rational here would ignore Mr. Shen's own actions involved with opening a Wish.com e-commerce store with the purpose of selling to Illinois consumers, offering to sell infringing product in US dollars, and accepting orders destined for Illinois addresses. Operating a Wish storefront and accepting orders from Illinois goes beyond having an "interactive" website. Finding that e-commerce sellers such as Mr. Shen merely operate "interactive websites" that are accessible across the country would force plaintiffs to speculate whether Mr. Shen sold a sufficient number of products into a specific jurisdiction before being able to file a lawsuit and obtain discovery. Indeed, Mr. Shen would then receive "the benefit of a nationwide business model with none of the exposure" (*Hemi Grp LLC*, 622 F.3d at 760), including Illinois. *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010). Litigating in the United States may impose some burden on Mr. Shen, however, "that is not a reason in itself to decline to

exercise personal jurisdiction over [him]." *Strabala v. Zhang*, 318 F.R.D. 81, 112 n.33 (N.D. Ill. 2016). Moreover, a foreign jurisdiction would be inappropriate for Bala's claims under U.S. law because, among other reasons, the United States and Illinois have a stronger interest in seeing that their citizens would have the protection of these consumer protection laws. *Luxottica Grp. S.p.A. v. Zhiqiang Zhao*, 2017 U.S. Dist. 2017 WL 1036576, at *6 (N.D. Ill. Mar. 17, 2017).

### 4. Personal Jurisdiction is Proper Under F.R.C.P. 4(k)(2)

There can be no question that Mr. Shen's Wish e-commerce stores targeted Illinois. As such, should this Court determine that personal jurisdiction is not proper under Fed. R. Civ. P. 4(k)(1) based on the Illinois Long Arm Statute, personal jurisdiction is proper pursuant to Fed. R. Civ. P. 4(k)(2).

Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided that: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over Mr. Shen; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Southeast and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *Plixer Int'l v. Scrutinizer GmbH*, 905 F.3d 1, 5 (1st Cir. 2018). Rule 4(k)(2) extends federal jurisdiction over non-resident defendants having sufficient contacts with the United States as a whole, but having insufficient contact with any single state to support jurisdiction. Fed. R. Civ. P. 4(k)(2) advisory committee's note (citing *Omni Capital Int.'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987)).

The first element of Rule 4(k)(2) is satisfied here because Bala's claims arise under federal copyright and design patent laws. Likewise, the second element is satisfied because Mr. Shen has not named a suitable forum state. *See Robert Bosch LLC v. Trico Prods. Corp.*, 2013 WL 11316920, at *6 (N.D. Ill. July 24, 2013). Under the second element, Bala is not required to

prove that a defendant is subject to the jurisdiction of a specific state. *ISI International, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 552 (7th Cir. 2001). "Instead, it is defendant's burden to name another state in which the suit could proceed if he wishes to preclude the use of Rule 4(k)(2). If the defendant does not name another state where the suit could go forward, the second requirement of Rule 4(k)(2) is satisfied." *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 853-54 (N.D. Ill. 2005).

The third and fourth elements of the Rule 4(k)(2) analysis require the same minimum contacts due process analysis conducted under Rule 4(k)(1)(A), the only difference being that the relevant forum is the United States as a whole, not an individual State. *Id.* at 5. As such, the third and fourth elements are satisfied here for the same reasons that satisfy the minimum contacts analysis required by Rule 4(k)(1)(A).

Finally, in cases with facts analogous to this one Courts have found that personal jurisdiction is established when defendants operate e-commerce stores on platforms like Wish, that target United States consumers in Illinois. *See Oakley, Inc. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 20-CV-06676, 2020 WL 9455191, at *1 (N.D. Ill. Dec. 11, 2020)(stating there is "personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and have sold products that infringe directly and/or indirectly Oakley's United States design patents shown in the below chart.") Mr. Shen has similarly targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or

more Seller Aliases, offering shipping to the United States, including Illinois, accepting payment in U.S. dollars, and accepting orders destined for Illinois addresses. Accordingly, personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2).

### 5. Mr. Shen's Declaration Raises Factual Disputes

The Court should disregard Mr. Shen's statement that Mr. Shen did not sell accused product into the United States, and thus Illinois, because the declaration raises factual disputes, and for purposes of a motion to dismiss, any factual disputes in affidavits are resolved in Plaintiff's favor. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (finding that in determining a motion to dismiss under 12(b)(2), all well-pleaded facts alleged in the complaint are taken as true and any factual disputes in affidavits are resolved in plaintiffs' favor"). The declarant states that Mr. Shen never sold or shipped any product at issue to the United States, and that 80 products were sold outside of the United States. The statements do not comport with Mr. Shen's product listings and the evidence outlined below.

First, paragraph five of the declaration states, "[t]he Stores have never sold and shipped any product at issue in this case to the United States." Dkt. 49-4, ¶ 5. However, that does not appear to be true. First, Bala attaches proof that Mr. Shen's accused products were purchased by, and thus sold to, purchasers seeking to ship product to an Illinois address. *See* Exhibit C. Further, some of Mr. Shen's product listing pages, shown below and included as exhibits to the

initial pleadings, state that "[s]hipping from United States [is] available." *See* Dkt. 17-5; Exhibit D.



If shipping from the United States is available, Mr. Shen must have accused product readily available in the United States that, at some point, must have been shipped to the United States, contrary to the statement in the declaration.

Additionally, Mr. Shen deliberately set the prices associated with shipment to the United States and stood ready and willing to accept orders from United States customers. Importantly, Wish merchants have the ability to set their shipping rates. *See* Exhibit B. Here, some of Mr. Shen's stores indicate they ship from the United States via Express Shipping for $12 while others of Mr. Shen's stores deliberately priced Express Shipping at $11, for example. *See* Exhibits E and F.

12



The fact that different storefronts show different express shipping prices to the United States further indicates that the pricing was deliberately set by Mr. Shen, and Mr. Shen deliberately intended to offer shipment into the United States, including Illinois.

In addition, despite Mr. Shen's claim that he does not sell product in the United States, Mr. Shen's Exhibit B suggests otherwise. Though it remains unclear what Mr. Shen intends Exhibit B to illustrate, some of the screenshots included in Exhibit B show that Mr. Shen conducts business in multiple countries, including, the United States. Pursuant to Wish's

policies, merchants can setup both primary warehouses and secondary warehouses, as evidenced at the top of the screenshot.



If the seller is located in China, the primary warehouse is typically located in China. However, secondary warehouses, listed at the top of the screenshot, are "essentially merchants' overseas warehouses located outside of Mainland China. Inventory in your Secondary warehouses is your overseas inventory." *See* Exhibit G. The screenshots indicate that Mr. Shen has a secondary warehouse in the United States, and may also warehouse the accused product in the United States. This further calls into question Mr. Shen's claims that stores "solely operate at address in China." Dkt. 49-4, ¶ 4.

Finally, the declaration states that, "[t]he Stores sold approximately 80 items of the product at issue outside of the United States." Dkt. 49-4, ¶ 6. On information and belief, Mr. Shen sold more than 80 accused products. Bolos Decl. ¶ 7.

Ultimately, the statements in the declaration provided by Mr. Shen are not consistent with evidence from Mr. Shen's own exhibit and product listings, and thus raise factual disputes. For purposes of this motion, any factual disputes should be resolved in Plaintiff's favor, and thus the Court should disregard Mr. Shen's statement that he did not ship or sell accused product in the United States, and thus Illinois.

## V. CONCLUSION

The Court has personal jurisdiction over Mr. Shen because Mr. Shen consciously and deliberately chose to do business in Illinois as evidenced by accepting at least 93 orders of the accused product intended for Illinois addresses. Mr. Shen purposefully directed his activities at Illinois and purposefully availed himself of the privilege of conducting business in Illinois. Further, the cause of action arises out of Mr. Shen's activities in Illinois, and by accepting such orders Mr. Shen had knowledge the effects would be felt in Illinois. Accordingly, Plaintiff respectfully requests that this Court deny Mr. Shen's Motion to Dismiss under Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

Bala Bangles, Inc.

Dated: February 25, 2022

/s/Michelle Bolos
Marshall, Gerstein & Borun LLP
Benjamin T. Horton
Gregory J. Chinlund
Michelle Bolos
Kelley S. Gordon
233 South Wacker Drive
6300 Willis Tower

Chicago, Illinois 60606-6357
Telephone: (312) 474-6300
Fax: (312) 474-7044
bhorton@marshallip.com
gchinlund@marshallip.com
mbolos@marshallip.com
kgordon@marshallip.com

*Attorneys for Plaintiff*